UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x
                                   :

NATIONAL FOOTBALL LEAGUE      :
PLAYERS ASSOCIATION and NATIONAL  :
FOOTBALL LEAGUE PLAYERS       :
INCORPORATED,                  :

               Plaintiffs,     :   No. 1:24-cv-6407 (AT)
                              :

     v.                   :   **Oral Argument Requested**
                              :

DRAFTKINGS INC. and DK CROWN    :
HOLDINGS INC.,               :

               Defendants.    :
----------------------------------------------------------x

 

**DEFENDANTS DRAFTKINGS INC. AND DK CROWN HOLDINGS INC.'S
REPLY IN SUPPORT OF THEIR
<u>MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT .................................................................................................................... 4

    I.    As A Matter Of Law, Plaintiffs Cannot Recover The Allegedly
    Remaining "Guaranteed Payments." ..................................................................... 4

        A.    The "Willful Misconduct" Exemption To The Limitation Of Liability
        Does Not Apply. ........................................................................................ 4

        B.    Plaintiffs' Contrary Interpretation Of The "Willful Misconduct"
        Exemption Violates Plain Meaning And Well-Settled Canons Of
        Construction. ............................................................................................. 6

        C.    Plaintiffs Do Not Even Allege Any Failure To Make Payments. ............. 10

    II.    As A Matter Of Law, Plaintiffs Cannot Recover Any Consequential
    Damages. .............................................................................................................. 12

CONCLUSION ................................................................................................................ 15

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Banc of Am. Sec. LLC v. Solow Building Co. II,*
  47 A.D.3d 239 (1st Dep't 2007)................................................................................5

*Beauvoir v. Israel,*
  794 F.3d 244 (2d Cir. 2015)....................................................................................11

*Becerra v. Empire Health Found., for Valley Hosp. Med. Ctr.,*
  597 U.S. 424 (2022)..................................................................................................8

*Broder v. Cablevision Sys. Corp.,*
  418 F.3d 187 (2d Cir. 2005).....................................................................................11

*Constellation Brands Inc. v. Keste, LLC,*
  2014 WL 6065776 (W.D.N.Y. Nov. 13, 2014) ......................................................13

*Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured*
  *Prods., Inc.,*
  958 F. Supp. 2d 488 (S.D.N.Y. 2013)......................................................................10

*Devash LLC v. German Am. Cap. Corp.,*
  104 A.D.3d 71 (1st Dep't 2013) ..............................................................................5

*DynCorp v. GTE Corp.,*
  215 F. Supp. 2d 308 (S.D.N.Y. 2002)......................................................................10

*Fed. Land Bank of St. Paul v. Bismarck Lumber Co.,*
  314 U.S. 95 (1941) ....................................................................................................8

*Five Star Dev. Resort Cmtys., LLC v. iStar RC Paradise Valley, LLC,*
  2012 WL 4119561 (S.D.N.Y. Sept. 18, 2012).........................................................5

*Gallo v. Moen, Inc.,*
  813 F.3d 265 (6th Cir. 2016) ...................................................................................9

*Helvering v. Gregory,*
  69 F.2d 809 (2d Cir. 1934)........................................................................................8

*Holmes v. Air Line Pilots Ass'n, Int'l,*
  745 F. Supp. 2d 176 (E.D.N.Y. 2010) ....................................................................5

*In re Indesco Int'l, Inc.,*
  451 B.R. 274 (Bankr. S.D.N.Y. 2011)...................................................................6, 9

*Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.,*
  84 N.Y.2d 430 (1994) ......................................................................................3, 4, 10

*Middleworth v. Ordway,*
  191 N.Y. 404 (1908).................................................................................................8

ii

*Molzof v. United States*,
    502 U.S. 301 (1992) ..................................................................................8

*Morissette v. United States*,
    342 U.S. 246 (1952) ..................................................................................8

*Nielsen Co. (U.S.), LLC v. Success Sys., Inc.*,
    112 F. Supp. 3d 83 (S.D.N.Y. 2015) ....................................................6, 9

*Optima Media Grp. Ltd. v. Bloomberg L.P.*,
    2018 WL 1587074 (S.D.N.Y. Mar. 28, 2018) .........................................15

*Pacs Indus., Inc. v. Cutler-Hammer, Inc.*,
    103 F. Supp. 2d 570 (E.D.N.Y. 2000) ...................................................11

*Penncro Assocs., Inc. v. Sprint Spectrum, L.P.*,
    499 F.3d 1151 (10th Cir. 2007) .......................................................1, 2, 6

*Perrigo Pharma Int'l Designated Activity Co. v. Mead Johnson & Co. LLC*,
    2024 WL 1375947 (S.D.N.Y. Apr. 1, 2024) ......................................13, 14

*PNC Bank, N.A. v. Dana Transp., Inc.*,
    2022 WL 3701441 (S.D.N.Y. Aug. 26, 2022) .......................................3, 5

*PNC Bank, N.A. v. Dana Transp., Inc.*,
    2024 WL 4662987 (2d Cir. Nov. 4, 2024) ............................................3, 5

*Popkin v. Sec. Mut. Ins. Co. of N.Y.*,
    48 A.D.2d 46 (1st Dep't 1975) ..................................................................8

*Powermat Techs., Ltd. v. Belkin Int'l Inc.*,
    2020 WL 2892385 (S.D.N.Y. Apr. 2, 2020) ...........................................10

*Process Am., Inc. v. Cynergy Holdings, LLC*,
    839 F.3d 125 (2d Cir. 2016) .....................................................................4

*Qube Films Ltd v. Padell*,
    2016 WL 881128 (S.D.N.Y. Mar. 1, 2016) .............................................10

*Radiology & Imaging Specialists of Lakeland, P.A. v. FUJIFILM Med.*
    *Sys., USA, Inc.*,
    2021 WL 149027 (S.D.N.Y. Jan. 15, 2021) ......................................12, 14

*Reid Hosp. & Health Care Servs., Inc. v. Conifer Revenue Cycle Sols.*,
    LLC, 8 F.4th 642 (7th Cir. 2021) ..............................................................6

*Reina v. Robert P. Kulchinsky, M.D., P.C.*,
    2005 WL 3240581 (N.Y. Sup. Ct. May 25, 2005) ..................................6, 7

*Rockland Exposition, Inc. v. Great Am. Assur. Co.*,
    746 F. Supp. 2d 528 (S.D.N.Y. 2010) ......................................................8

*Sabella v. Scantek Med., Inc.*,
    2009 WL 3233703 (S.D.N.Y. Sept. 25, 2009) ..........................................5

*Salerno v. Coach, Inc.*,
  144 A.D.3d 449 (1st Dep't 2016) .................................................................8

*In re Sarex Corp.*,
  509 F.2d 689 (2d Cir. 1975).......................................................................7

*Scenic Am., Inc. v. Dep't of Transp.*,
  583 U.S. 936 (2017)....................................................................................9

*Serengeti Express, LLC v. JP Morgan Chase Bank, N.A.*,
  2020 WL 2216661 (S.D.N.Y. May 7, 2020) .................................12, 13

*Spanski Enters., Inc. v. Telewizja Polska, S.A.*,
  581 F. App'x 72 (2d Cir. 2014)...................................................................9

*TOA Sys., Inc. v. Int'l Bus. Machines Corp.*,
  2019 WL 5693388 (S.D.N.Y. Nov. 4, 2019) ................................12, 13

*In re Vivaro Corp.*,
  2014 WL 486288 (Bankr. S.D.N.Y. Feb. 6, 2014) ................................13

*VL8 Pool, Inc. v. Glencore Ltd.*,
  2021 WL 1152936 (S.D.N.Y. Mar. 25, 2021) ..............................12, 13

*VTech Holdings Ltd. v. Lucent Techs., Inc.*,
  172 F. Supp. 2d 435 (S.D.N.Y. 2001).........................................................5

## OTHER AUTHORITIES

A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts (2012) ..........................8

22 N.Y. Jur. 2d *Contracts* § 233 (2d ed., 2024 update) ................................................8

## PRELIMINARY STATEMENT

Plaintiffs' opposition to DraftKings' Motion to Dismiss (the "Opposition") confirms their demand for ███████ plus consequential damages is barred by, among other things, the unambiguous limitation of liability provision in the Agreement. The plain contract language, fundamental canons of construction, and longstanding case law all lead to the same conclusion. The highly sophisticated parties here agreed to limit liability on all claims, except those "resulting from gross negligence, willful misconduct (including failure to make payments under this Agreement), or fraud." Under well-settled New York law, the term "willful misconduct"—when used in a limitation-of-liability provision—is a legal term of art that requires the breaching party to have intended to inflict harm. Plaintiffs do not allege any intent to inflict harm, as required to plead willful misconduct; to the contrary, their own binding allegations negate any such inference. *See* Mot. 12. As a result, Plaintiffs' demand for damages in excess of the limitation of liability provision is barred as a matter of law and should be dismissed.

Recognizing that they do not and cannot plead willful misconduct, Plaintiffs insist the Agreement defines "willful misconduct" to encompass any "failure to make payments." Opp. 11–19. But Plaintiffs have it wrong. They have no response to the numerous cases rejecting that very argument in this exact context. As then-Judge Gorsuch explained in construing a similar limitation of liability provision in *Penncro Associates, Inc. v. Sprint Spectrum, L.P.*, "while the parties may depart from the meanings associated with ordinary English and existing law, courts will recognize and give effect to such private definitions only where the parties' intention to deviate from common usage is manifest." 499 F.3d 1151, 1157 (10th Cir. 2007). The court held that parties to a contract do not manifest such an intent by using "an illustrative list of the sorts of . . . damages excluded" from a limitation of liability provision. *Id.* Thus, a provision barring consequential

damages "including, but . . . not limited to, lost profits" did not *define* consequential damages "to encompass *any* lost profits" but excluded lost profits *only* if they otherwise constituted consequential damages. *Id.* at 1155, 1157 (cleaned up). Similarly, here, the plain language of the Agreement does not define willful misconduct to encompass *any* failure to make payments but excludes *only* failures to make payments that otherwise constitute willful misconduct.

Plaintiffs do not even address *Penncro* or the other cases rejecting their idiosyncratic definition argument—all of which were cited in DraftKings' opening brief. *See* Mot. 16–17. Their only response to those cases—which are fatal to their position—is buried in an incomprehensible footnote. *See* Opp. 18 n.10.

Plaintiffs also advance a new argument that incorrectly adds language to the Agreement that does not exist. After insisting that the "including" parenthetical *defines* willful misconduct to include all failures to make payments, *Plaintiffs add a qualifier not found in the parenthetical*. They assert "'willful misconduct' encompass[es] an *intentional* 'failure to make payments under the Agreement.'" Opp. 17 (cleaned up) (emphasis added). Their addition of the word "intentional" gives the game away because Plaintiffs apparently realize they must limit the relevant failures to make payments somehow or else they render the phrase "willful misconduct" superfluous, which is why they invent a qualifier outside the parenthetical to give meaning to "willful misconduct" in the context of non-payment. In other words, even Plaintiffs must eventually concede that the parenthetical does not define willful misconduct, it merely confirms that one type of willful misconduct—a failure to make payment based on willful misconduct—is excluded from the limitation of liability.

Plaintiffs' attempt to depart from black-letter New York law holding that willful misconduct requires more than intentional breach of contract fares no better. Their lead case about

the supposed "'inconsistent' application" of New York law was *reversed* by the Second Circuit after the parties filed their pre-motion letters here. Opp. 13–14 (citing *PNC Bank, N.A. v. Dana Transp., Inc.*, 2022 WL 3701441, at *7 (S.D.N.Y. Aug. 26, 2022), *rev'd*, 2024 WL 4662987 (2d Cir. Nov. 4, 2024)). As a result, there is no support under New York law for Plaintiffs' attempt to twist willful misconduct to mean mere intentional breach of contract. And Plaintiffs' attempt to chop up the legal term of art "willful misconduct" into separate and individually defined words (*see* Opp. 16) violates multiple bedrock principles of contract interpretation.

The reality is much simpler than Plaintiffs' contortions suggest. Plaintiffs regret their bargained-for limitation of liability provision, protesting that applying its terms as written would not lead to "a commercially reasonable outcome." Opp. 15. But that sellers' remorse argument goes nowhere. New York courts "see no harm in express agreements limiting the damages to be recovered for breach of contract," even if the parties agree that "they shall not be enforceable *at all*." *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 436 (1994) (emphasis added) (citation omitted). Parties "may later regret their assumption of the risks of non-performance in this manner; but the courts let them lie on the bed they made." *Id.* (citation omitted).

Because Plaintiffs' damages claims are barred by the plain terms of the limitation of liability provision, the Court should dismiss (i) Plaintiffs' claims for any damages in excess of either the amount paid or payable by DraftKings during the 12-month period immediately preceding the events first giving rise to the claim, or ███████, and (ii) Plaintiffs' claims for consequential damages.

## ARGUMENT

I.      **As A Matter Of Law, Plaintiffs Cannot Recover The Allegedly Remaining "Guaranteed Payments."**

A.      **The "Willful Misconduct" Exemption To The Limitation Of Liability Does Not Apply.**

The highly sophisticated parties here agreed to limit liability on all claims, except those "resulting from gross negligence, willful misconduct (including failure to make payments under this Agreement), or fraud."  Under well-settled New York law, the term "willful misconduct"— when used in a limitation-of-liability provision—is a legal term of art that requires the breaching party to have "willfully intended to inflict harm."  *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 439 (1994); *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 138 (2d Cir. 2016) (applying New York law).  Plaintiffs do not and cannot allege that DraftKings willfully intended to inflict harm.  To the contrary, their own binding allegations negate any such inference of "willful misconduct."  *See* Mot. 12.[1]  As a result, Plaintiffs' request for damages in excess of the limitation provision is barred as a matter of law.  *See id.* at 10–14.

Plaintiffs urge this Court to disregard the Court of Appeals' binding holding in *Metropolitan Life Insurance Co.* as limited to its facts.  *See* Opp. 12 & n.4.  In doing so, they ignore the Second Circuit's subsequent decision in *Process America*, which is equally binding on this Court.  As *Process America* explained, where, as here, "repudiation of a contract was 'motivated exclusively by . . . economic self-interest,' there was insufficient proof of any intent to 'inflict harm.'"  839 F.3d at 138 (quoting *Metro. Life*, 84 N.Y.2d at 439).  Plaintiffs have no response.

---

[1] Contrary to Plaintiffs' representation, DraftKings has *not* "explicitly admitted that it acted to advance . . . its own economic self-interest."  Opp. 22.  As Plaintiffs know, DraftKings' motion to dismiss takes the allegations of the Complaint as true without admitting they have any basis in reality.  DraftKings properly exercised its broad termination rights and looks forward to presenting evidence demonstrating the validity of its termination.

Plaintiffs continue to insist, as they did in their pre-motion response, that the well-settled meaning of "willful misconduct" is not "uniformly applied" under New York law. Opp. 13–14; *see* Dkt. 23 at 4. In the interim, however, the Second Circuit *reversed* the very case upon which Plaintiffs rely to show that purported inconsistency in New York law. Opp. 13–14 (citing *PNC Bank*, 2022 WL 3701441, at *7 (S.D.N.Y. Aug. 26, 2022), *rev'd*, 2024 WL 4662987 (2d Cir. Nov. 4, 2024)). And even if *PNC Bank* were still good law, it would offer no help to Plaintiffs. That case relied on *Banc of America Securities LLC v. Solow Building Co. II*, which required misconduct "*well beyond* a simple breach of the parties' agreement" to establish willful misconduct. 47 A.D.3d 239, 248 (1st Dep't 2007) (emphasis added). Other courts in this District have correctly refused to read *Solow* "to suggest that an intentional and opportunistic contract breach, without more" equals willful misconduct—a reading that would be "inconsistent with state law as established by *Metropolitan Life*, which this Court is bound to follow." *Five Star Dev. Resort Cmtys., LLC v. iStar RC Paradise Valley, LLC*, 2012 WL 4119561, at *5 (S.D.N.Y. Sept. 18, 2012); *see also Devash LLC v. German Am. Cap. Corp.*, 104 A.D.3d 71, 77–78 (1st Dep't 2013) (reading *Solow* to apply only when conduct is "unrelated to any legitimate economic self-interest"). In sum, there is zero support under New York law for Plaintiffs' twisting of willful misconduct to mean mere intentional breach of contract, which is all Plaintiffs allege here.[2]

---

[2] Nor do the cases that Plaintiffs cite show that New York courts lack a uniform definition for willful misconduct. *See* Opp. 14 n.5. In *Holmes v. Air Line Pilots Ass'n, Int'l*, 745 F. Supp. 2d 176, 203–04 (E.D.N.Y. 2010), the district court implicitly recognized that a contractual breach is fundamentally distinct from (and does not by itself constitute) "willful misconduct." *Id.* at 204 ("[T]here are no explicit allegations of willful misconduct in connection with the breach of contract claim."). The broader discussion in *Sabella v. Scantek Med., Inc.*, 2009 WL 3233703 (S.D.N.Y. Sept. 25, 2009) illustrates that "willful misconduct" refers to something far more nefarious than mere non-performance. *Id.* at *30–32 (noting that an exculpation clause would not save a party from liability for a "fraudulent scheme" to "deprive" another party of their investment). And the court's discussion in *VTech Holdings Ltd. v. Lucent Techs., Inc.*, 172 F. Supp. 2d 435, 441–42

**B.    Plaintiffs' Contrary Interpretation Of The "Willful Misconduct" Exemption Violates Plain Meaning And Well-Settled Canons Of Construction.**

Unable to allege "willful misconduct" as New York courts interpret that phrase, Plaintiffs retreat to arguing that the parties to this Agreement defined willful misconduct to mean something other than willful misconduct.  *See* Opp. 12.  The Agreement is replete with defined terms, *see, e.g.*, Agreement § 1(F), 2(C), (D), yet Plaintiffs cannot point to any of them defining willful misconduct.  Instead, they say the "including" parenthetical itself defines the term.  Opp. 17.

Numerous courts have rejected that exact argument.  Plaintiffs do not *even acknowledge* the litany of cases cited by DraftKings establishing that phrases like "(including failure to make payments under this Agreement)" *illustrate* rather than *alter* preceding categories of conduct (*e.g.*, "willful misconduct") that are explicitly exempted from a limitation of liability.  *See, e.g.*, *Reid Hosp. & Health Care Servs., Inc. v. Conifer Revenue Cycle Sols.,* LLC, 8 F.4th 642, 650 (7th Cir. 2021); *Nielsen Co. (U.S.), LLC v. Success Sys., Inc.*, 112 F. Supp. 3d 83, 102–03 (S.D.N.Y. 2015); *In re Indesco Int'l, Inc.*, 451 B.R. 274, 316 (Bankr. S.D.N.Y. 2011).  As then-Judge Gorsuch explained, "[o]rdinary usage and common experience" confirm that "[t]he more general term" (*i.e.*, willful misconduct) "informs the subsequently listed examples" (*i.e.*, failure to make payments), "not the other way around, and so [failure to make payments] here refer[s] only to those that are 'a part or component' of the larger group or class" of willful misconduct.  *Penncro Assocs.*, 499 F.3d at 1156.  *Penncro* and these other on-point cases end the inquiry here.

Ignoring those cases interpreting "including" clauses in limitation of liability provisions, Plaintiffs instead rely on an unpublished trial court decision, *Reina v. Robert P. Kulchinsky, M.D., P.C.*, 2005 WL 3240581, at *2 (N.Y. Sup. Ct. May 25, 2005), for the proposition that parenthetical

---

(S.D.N.Y. 2001) was limited to the phrase "willful misrepresentation" because it concluded that phrase was sufficiently distinct from the *Metropolitan Life* court's consideration of "willful acts."

language "defines" the text immediately preceding it.  Opp. 17.  But the parenthetical in *Reina*—
"any Practice physician (whether an independent contractor or employee of the Practice)"—did
not even use the word including.  2005 WL 3240581, at *1.  And that court was making the
*opposite* of Plaintiffs' point, holding that the medical practice's owner was a "Practice physician"
even though he was *not* an independent contractor or employee.  *Id.* at *2.[3]  The main
(unpublished) case Plaintiffs rely on actually defeats their argument.

In any event, Plaintiffs' argument, if accepted, would create an absurd and commercially
unreasonable result.  If the Agreement actually defined "willful misconduct" to mean all "failure[s]
to make payments," then it would encompass even unintentional, accidental oversights.  *See* Mot.
18.  Because even Plaintiffs recognize such an interpretation would be absurd, they invent and
insert new qualifying language that does not appear in the text: "'willful misconduct,'" Plaintiffs
say, "encompass[es] an *intentional* 'failure to make payments under the Agreement.'"  Opp. 17
(cleaned up) (emphasis added).  That invented qualifier concedes the argument because Plaintiffs
must look *outside* the parenthetical and draw it from their misinterpretation of the term "willful
misconduct."  In other words, even Plaintiffs acknowledge the parenthetical does not actually
define willful misconduct but merely illustrates a particular subset of willful misconduct.

Of course, interpreting willful misconduct to mean merely intentional misconduct (as
opposed to conduct intended to inflict harm) conflicts with black-letter New York law.  *Supra*
Section I.A.  It also conflicts with fundamental principles of interpretation.  Even if "willful" could
mean merely "intentional" in isolation, *see* Opp. 16 (citing dictionary definition of "willful"),
identifying "the hyperliteral meaning of each word in the text" is an exceptionally poor way to

---

[3] Plaintiffs' reliance (Opp. 17) on *In re Sarex Corp.*, 509 F.2d 689 (2d Cir. 1975), is equally
misplaced.  That case stands only for the undisputed proposition that "including" is illustrative,
not exhaustive.

ascertain "the *fair meaning* of the text (the textualist's touchstone)."  A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 356 (2012) (footnote omitted).  Put another way, "the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes."  *Helvering v. Gregory*, 69 F.2d 809, 810–11 (2d Cir. 1934) (L. Hand, J.).  Willful misconduct is a legal term of art, and when a text uses "a legal term of art," it is read to "adopt[] the cluster of ideas that were attached" to that term under existing law.  *Molzof v. United States*, 502 U.S. 301, 307 (1992) (quoting *Morissette v. United States*, 342 U.S. 246, 263 (1952)).  And technical legal meanings typically trump ordinary ones, unless compelling evidence suggests otherwise.  *See Middleworth v. Ordway*, 191 N.Y. 404, 413 (1908); 22 N.Y. Jur. 2d *Contracts* § 233 (2d ed., 2024 update).  Plaintiffs cannot use dictionaries to chop up "willful misconduct" into unrelated parts.

With case law and canons of construction defeating their argument, Plaintiffs write off all of DraftKings' canons of construction as limited "to the interpretation of federal *statutes*, not private contracts."  Opp. 15, 17 (citing *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) (the term "including" "connotes simply an illustrative application of the general principle"); *Becerra v. Empire Health Found., for Valley Hosp. Med. Ctr.*, 597 U.S. 424, 440 (2022) (sophisticated parties rarely upend the settled meaning of a term through "so subtle, indirect, and opaque a mechanism" as a parenthetical)).  That is incorrect.  It "is not uncommon for courts interpreting contracts to rely on the same principles that guide statutory construction."  *Rockland Exposition, Inc. v. Great Am. Assur. Co.*, 746 F. Supp. 2d 528, 537 n.8 (S.D.N.Y. 2010); *see also Popkin v. Sec. Mut. Ins. Co. of N.Y.*, 48 A.D.2d 46, 48 (1st Dep't 1975) (invoking the *noscitur a sociis* canon in the "construction of a plain contract"); *Salerno v. Coach, Inc.*, 144 A.D.3d 449, 450 (1st Dep't 2016) ("[T]he doctrine of *expressio unius est exclusio alterius*

appropriately applies as a tool of contract construction."); *Gallo v. Moen, Inc.*, 813 F.3d 265, 269 (6th Cir. 2016) (recognizing that contracting parties, like Congress, are not expected to hide "elephants in mouseholes").[4]

That is why multiple courts, for example, have applied the *noscitur a sociis* canon in this very context, interpreting "including" clauses within limitation of liability provisions. *See, e.g.*, *Nielsen Co.*, 112 F. Supp. 3d at 103; *In re Indesco*, 451 B.R. at 316. Each of those courts has recognized that the "word 'including,'" shows that the words it introduces must be "a subset" of the proceeding words, *In re Indesco*, 451 B.R. at 316—not, as Plaintiffs proclaim, the other way around, *see* Opp. 18. And even Plaintiffs concede "a court must strive to give meaning to every sentence, clause, and word" in construing a contract. *Spanski Enters., Inc. v. Telewizja Polska, S.A.*, 581 F. App'x 72, 73 (2d Cir. 2014). As DraftKings has demonstrated, Plaintiffs' interpretation violates that principle by giving no meaning to the word "including." Mot. 19. Plaintiffs offer no response.

Plaintiffs' own surplusage argument is unpersuasive. Enforcing the plain text of the limitation of liability provision would not result in the provision "ceas[ing] to have any meaning at all." Opp. 16. DraftKings, like Plaintiffs, agrees that "the limitation of liability provision *must* be interpreted to include at least some 'failure[s] to make payments,'" *id.*—that is, those that otherwise qualify as willful misconduct. Under DraftKings' interpretation, the willful misconduct

---

[4] Plaintiffs cherry-pick quotes from Justice Gorsuch's statement respecting the denial of certiorari in *Scenic America, Inc. v. Department of Transportation*, 583 U.S. 936 (2017), to suggest that parties cannot import interpretive canons originally applied to statutes into the context of contractual interpretation. Opp. 17. That is simply wrong. Justice Gorsuch argued that the *Chevron* doctrine—which, until recently, guided statutory interpretation disputes between federal agencies and private parties—should not govern contract disputes between federal agencies and private parties. But the interpretive canons DraftKings invokes, unlike *Chevron*, are not unique to the statutory context and are regularly applied in contract interpretation.

exemption might apply if, for example, DraftKings employees repeatedly and "personally appropriat[ed]" money owed to Plaintiffs, intended to harm Plaintiffs, and "fail[ed] to respond to [their] repeated inquiries." *Qube Films Ltd v. Padell*, 2016 WL 881128, at *5 (S.D.N.Y. Mar. 1, 2016). The willful misconduct exemption might also apply if DraftKings "willfully" intended to harm Plaintiffs and "failed to cure [known] breaches for more than five years." *Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488, 501 (S.D.N.Y. 2013). But the willful misconduct exemption does not sweep in failures to make payment that do not, based on Plaintiffs' own allegations, qualify as willful misconduct.

Finally, Plaintiffs suggest applying the limitation of liability as written "leads to commercially absurd results." Opp. 15. But limitation of liability provisions are commonplace and designed to "allocat[e] . . . the risk of economic loss in the event that the contemplated transaction is not fully executed." *Metro. Life*, 84 N.Y.2d at 436. New York "courts should honor" such allocations even if one party later comes to "regret their assumption of the risks of non-performance in this manner." *Id.* (citation omitted).

The limitation of liability clearly and unambiguously applies to all failures to make payments under the Agreement, *except* those that amount to "willful misconduct" (*i.e.*, those that were done with the intent to harm Plaintiffs). Because Plaintiffs do not allege such intent, DraftKings is entitled to dismissal of Plaintiffs' damages claims in excess of the limitation of liability as a matter of law.

### C.    Plaintiffs Do Not Even Allege Any Failure To Make Payments.

Plaintiffs do not and cannot dispute that this Court may grant partial dismissal at the pleadings stage based on the limitation of liability. *See, e.g.*, *Powermat Techs., Ltd. v. Belkin Int'l Inc.*, 2020 WL 2892385, at *12–15 (S.D.N.Y. Apr. 2, 2020) (enforcing a limitation of liability provision on the pleadings); *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 318 (S.D.N.Y. 2002)

(similar, at the pleading stage); *Pacs Indus., Inc. v. Cutler-Hammer, Inc.*, 103 F. Supp. 2d 570, 573 (E.D.N.Y. 2000) (similar). Instead, they offer a halfhearted plea to defer ruling based on supposed "fact questions." Opp. 19. But no such fact questions exist. *See* Mot. 12–13. Indeed, even if Plaintiffs were correct that the limitation of liability provision excludes intentional failures to make payments, DraftKings would still be entitled to partial dismissal as a matter of law because Plaintiffs have not alleged (and cannot allege) that DraftKings failed to make any payments due.

Although the Complaint says DraftKings "neglected" to make a payment "due on August 1, 2024," Compl. ¶ 68, that statement is demonstrably false. "Insofar as the complaint relies on the terms of [an] agreement," the court "need not accept its description of those terms, but may look to the agreement itself." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).[5] What the Agreement says is that the installment payment was merely "*invoiceable* on or after August 1, 2024" and "*payable* by [DraftKings] within thirty (30) days of receipt of an accurate and undisputed invoice." Compl. Ex. A ("Amended Agreement") § 2(A) (emphasis added). In other words, DraftKings' obligation to *pay* depends on first receiving an "accurate and undisputed invoice" from Plaintiffs—but the Complaint never alleges that any such invoice was delivered, or that it went unpaid. To the contrary, because Plaintiffs filed the Complaint on August 23, the payment *could not* have been past due, as no invoice could issue until August 1 and the thirty-day clock would extend past the filing of the Complaint. Thus, the Complaint does not plausibly allege *any* failure to make a payment under the Agreement, much less one that was done with the intent of causing Plaintiffs harm.

---

[5] The Agreement itself forms part of the Complaint because "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015).

## II.    As A Matter Of Law, Plaintiffs Cannot Recover Any Consequential Damages.

Plaintiffs' attempt to bolster their request for "consequential damages" fares no better. That demand should be dismissed as barred by the Agreement's clear and unambiguous limitation of liability provision. *See* Compl. ¶¶ 74, 81.

The limitation of liability provides that "in *no event* shall a party be liable . . . for *any* special, *consequential*, incidental, or indirect damages." Amended Agreement § 10(A) (emphasis added). The Agreement's categorical bar on consequential damages is valid and enforceable under New York law, and courts regularly dismiss claims for consequential damages at the motion-to-dismiss stage. *See, e.g.*, *VL8 Pool, Inc. v. Glencore Ltd.*, 2021 WL 1152936, at *3–4 (S.D.N.Y. Mar. 25, 2021); *Serengeti Express, LLC v. JP Morgan Chase Bank, N.A.*, 2020 WL 2216661, at *4–5 (S.D.N.Y. May 7, 2020); *TOA Sys., Inc. v. Int'l Bus. Machines Corp.*, 2019 WL 5693388, at *3 (S.D.N.Y. Nov. 4, 2019).

Despite agreeing to that language, Plaintiffs say they can avoid the bar on recovering consequential damages, at least long enough to survive this motion to dismiss, simply because they believe DraftKings acted in "bad faith." Opp. 20. But the Complaint does not allege, even in conclusory fashion, that DraftKings acted in "bad faith." The "bad faith" exception to the enforceability of limitations of liability presents "a high bar" under New York law and requires "a compelling demonstration of egregious intentional misbehavior evincing extreme culpability; malice; recklessness; deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts." *Radiology & Imaging Specialists of Lakeland, P.A. v. FUJIFILM Med. Sys., USA, Inc.*, 2021 WL 149027, at *2 (S.D.N.Y. Jan. 15, 2021) (citation omitted). The Complaint here does not come close to meeting this standard.

The Complaint alleges, at most, that DraftKings terminated the Agreement because of "[b]uyers' remorse," that the NFT market had "cooled down," and that DraftKings was "facing a

civil lawsuit and regulatory inquiries into its [NFT] product." Compl. ¶ 3. These allegations negate an inference of "bad faith"—because, under black-letter New York law, "acting out of self-interest alone precludes a finding of bad faith or intentional wrongdoing." *Perrigo Pharma Int'l Designated Activity Co. v. Mead Johnson & Co. LLC*, 2024 WL 1375947, at *15 (S.D.N.Y. Apr. 1, 2024). And in analogous cases, courts have repeatedly rejected attempts to evade limitation of liability provisions with similar allegations. *See id.* (enforcing limitation of liability's bar on consequential damages and finding no bad-faith or intentionally wrongful acts alleged where "none of [plaintiff's] allegations specifically suggest that [defendant] intended to harm [plaintiff] rather than merely to act in its own economic self-interest"); *In re Vivaro Corp.*, 2014 WL 486288, at *5 (Bankr. S.D.N.Y. Feb. 6, 2014) (dismissing claim for consequential damages under limitation of liability and finding no bad faith where defendant's alleged misconduct "advance[ed] [defendant's] legitimate economic self-interest").

As a last resort, Plaintiffs say their "bad faith" allegation requires fact finding. Opp. 20–21. But the Complaint does not actually allege "bad faith," as explained above. In any event, Plaintiffs cite no authority for the proposition that alleging "bad faith," without more, is sufficient to survive a motion to dismiss. And Plaintiffs fail to address precedents resolving this issue on the pleadings.[6] Instead, Plaintiffs turn to definitions from more unpersuasive sources: this time, *Black's Law Dictionary*, which in 1910 included a definition of "bad faith" that Plaintiffs argue maps onto "exactly what is being alleged here." Opp. 20–21 & n.11. But that century-old definition does not displace the case law of this Circuit and New York State.

---

[6] *Compare* Mot. at 20, 22 (citing *VL8 Pool*, 2021 WL 1152936, at *3–4; *Serengeti Express*, 2020 WL 2216662, at *4–5; *TOA Sys.*, 2019 WL 5693388, at *3; *Constellation Brands Inc. v. Keste, LLC*, 2014 WL 6065776, at *6 (W.D.N.Y. Nov. 13, 2014)), *with* Opp. at 19–23 (citing none of these cases).

Plaintiffs' passing effort to engage with contrary authority is unpersuasive. Plaintiffs try to write off *Perrigo Pharma* as inapposite by citing only one of that court's narrower holdings regarding the limitation of liability provision, conspicuously ignoring the court's broader holding as to the plaintiff's allegations "when viewed as a whole." *See* Opp. at 23 n.13 (quoting *Perrigo Pharma*, 2024 WL 1375947, at *14); *Perrigo Pharma*, 2024 WL 1375947, at *15 (discussing reasons the plaintiff's allegations of bad faith were insufficient "even when viewed as a whole"). They also insist that both *Perrigo Pharma* and *Radiology & Imaging Specialists* are distinguishable from this case simply because Plaintiffs have alleged that DraftKings acted out of something more than mere self-interest. Opp. 22–23. But the only harm they say DraftKings "conscious[ly] inten[ded]" to inflict on Plaintiffs was to "deprive Plaintiffs of the benefit of their bargain" by avoiding payments that were no longer in DraftKings' economic interest to make. *See id.* In reality, Plaintiffs allege that they were harmed only to the extent that DraftKings benefited from acting in its own economic interest—nothing more.

In *Perrigo Pharma*, allegations of this exact nature were found to be insufficient to state a claim of bad-faith breach. 2024 WL 1375947, at *15 (no specific allegations of bad-faith conduct where the defendant "act[ed] in its own self-interest" in breaching a contract, but did not "attempt[] to coerce [plaintiff]" to extract concessions, "threaten[] [plaintiff] or declare its intent to inflict harm on [plaintiff]"). Likewise, in *Radiology & Imaging Specialists*, the court found general allegations that a defendant knowingly entered a contract without having the capability to perform its end of the bargain—thereby depriving the plaintiff of its benefit—to be insufficient. 2021 WL 149027, at *3. Because, here, Plaintiffs allege nothing more in their Complaint, their demand for consequential damages fails.

Finally, even assuming that a pretextual breach motivated by economic self-interest is sufficient to allege bad faith, which it is not, Plaintiffs themselves recognize there is no pretext here.  As Plaintiffs admitted, DraftKings allegedly terminated the Agreement because of "[b]uyers' remorse," that "the once white-hot market for NFTs has cooled down," and that DraftKings was "facing a civil lawsuit and regulatory inquiries into its product."  Compl. ¶ 3; *see* also Mot. 21; Opp. 22 n.12 (noting that DraftKings acknowledges its "buyer's remorse").  Critically, those are *good*-faith bases for termination.  DraftKings is free to reevaluate its interests as the legal landscape surrounding NFTs changes and permissibly terminate the Agreement pursuant to its terms.  Plaintiffs cannot credibly argue that such actions amount to bad faith.  As Plaintiffs themselves admit, the court's determination on the *Dufoe* motion to dismiss—especially when assessed against the background of changes in the market for NFTs—reasonably prompted such reconsideration by DraftKings.  That is the opposite of bad faith.

Although Plaintiffs "may . . . regret their assumption of the risks of non-performance," they are not entitled to avoid its consequences; this Court should "let them lie on the bed they made." *Optima Media Grp. Ltd. v. Bloomberg L.P.*, 2018 WL 1587074, at *7 (S.D.N.Y. Mar. 28, 2018) (citation omitted).

## CONCLUSION

For all these reasons, the Court should dismiss (i) Plaintiffs' claims for any damages in excess of either the amount paid or payable by DraftKings during the 12-month period immediately preceding the events first giving rise to the claim, or █████████, and (ii) Plaintiffs' claims for consequential damages.

Dated: New York, New York                    GIBSON, DUNN & CRUTCHER LLP
      January 3, 2025


By: /s/ *Orin Snyder*
    Orin Snyder
    Matt Benjamin
    Grace E. Hart
    GIBSON, DUNN & CRUTCHER LLP
    200 Park Avenue
    New York, NY 10166
    (212) 351-4000
    osnyder@gibsondunn.com
    mbenjamin@gibsondunn.com
    ghart@gibsondunn.com

    Jacob T. Spencer (*pro hac vice*)
    GIBSON, DUNN & CRUTCHER LLP
    1700 M Street, N.W.
    Washington, DC 20036
    (202) 955-8500
    jspencer@gibsondunn.com

    *Attorneys for Defendants DraftKings Inc. and*
    *DK Crown Holdings Inc.*

16

<u>**CERTIFICATE OF COMPLIANCE**</u>

I, Orin Snyder, certify that Defendants DraftKings Inc. and DK Crown Holdings Inc.'s Reply in Support of their Motion for Partial Dismissal of the Complaint complies with the requirements of Local Rule 7.1(c), as modified by § III(D) of this Court's Individual Practices in Civil Cases.  *See* Local Rule 7.1(c) (allowing that a court may "permit[] a party to submit briefs longer than [Local Rule 7.1(c)'s] limits").

I further certify that this memorandum of law was prepared with a computer.

I further certify that this memorandum of law contains 4,907 words, including any footnotes or endnotes and excluding only those sections of the brief that are exempted under Local Rule 7.1(c).  In preparing this certificate of compliance, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

Dated: January 3, 2025

/s/ *Orin Snyder*
Orin Snyder